Smith, J,
The errors complained of are that the court of common pleas excluded competent evidence, and admitted incompetent evidence over the objection of the plaintiffs — on the charge given to the jury, and in refusing to give the special instructions asked by the plaintiffs- — -and in overruling their motion and amended motion for a new trial.
Briefly stated, the claim of the plaintiff was, that they had shipped under a verbal contract with the defendant company, a common carrier, two car loads of barley, to be transported by it to Wheeling, West Va., and then delivered to one John Butterfield, the consignee, and that through the negligence and carelessness of the defendant this was not done, but the barley was greatly damaged,to the loss of the plaintiffs in the sum of $673, for which, with interest, they ask a judgment,
The answer in effect denies that there was any verbal contract between the parties as alleged. That the defendant company had only a line of railroad from Cincinnati to Dayton, Ohio, and that the only contract between the *489 parties and under which this barley was shipped, was in writing, and was the regular bill of lading of the company — and that by the terms thereof, the defendant simply agreed to transport it to Dayton,and there deliver it in good order to a connecting line of railroad for shipment to Wheeling, and that it fully complied with such stipulation; that said contract further provided that if any loss ensued to the barley, the company in whose custody it was at the time of the loss, alone should be responsible therefor, and it denies that any damage resulted to the barley while in its custody. It also alleged that the contract contained a stipulation that no action should be brought thereon after one year from the time the cause of action accrued; and that more than one year had elapsed after the cause of action accrued, before this suit was brought.
It is manifest that if there was no verbal contract between these parties in regard to the shipment of the barley, and that the only contract was embodied on the bill of lading introduced in evidence, that the plaintiffs were not entitled to recover in that action. They sued on a verbal contract containing no limitation on the common law liability of the carrier. If they fail to prove such contract, or the evidence shows that the contract of shipment was in writing, and that it did contain limitations thereon,' it is fatal to the right of the plaintiff to recover on his claim as made, for the agreement proved is not the one sued on, and unless the pleadings are amended, and a claim thus asserted on the real contract, they must go out of court.
We think it entirely clear that the court very properly overruled the motion filed for a new trial on the ground that the verdict of the jury was against the weight of the evidence; and the action of the court in refusing to sustain' the amended motion, can not be reviewed by us, for the evidence submitted on that, was not incorporated into any bill of exceptions.
*490 The evidence submitted to the jury, so far from making out a case against the defendant, did not in our judgment tend to do so — that is, to show that the barley was shipped on a verbal contract. The testimony offered by the plaintiffs on this point, was that of Mr. Shaffer only, and was in substance this: That some time prior to the shipment of the barley, he asked Mr. Smith, the freight, agent of defendant at Hamilton, what the rate of freight would be per 100 pounds of barley to Wheeling, West Va., and was told that it would be 15-| cents. That two or three days after this, he loaded two cars of defendant’s company standing on the switch west of the Miami river, with the barley, and sent word to Mr. Smith that it was in the cars, and sent to him three blank bills of lading and shipping directions, the written part of which was filled in by himself, two of which were, returned to him signed by Mr. Smith or by his authority, and one of which, was kept by Smith; and that soon after this the two cars were taken away by the defendant company; that at the time he asked' Mr. Smith for the. rate, no bargain was made between them as to the shipment; that Smith then told him he would ascertain about the rate and let him know, but that he did not do so; and that he had no future conversation with Smith about the barley or its shipment until after he heard of the damage to the barley at Wheeling. One of the bills of lading he kept, and forwarded the other to Butterfield, the consignee, at Wheeling. This was substantially the only testimony offered by plaintiffs as to any verbal contract, and it was not supplemented by any evidence offered by the defendant,for Smith expressly denied that he had ever made any verbal contract for the shipment of the b.arley, or any contract other than that contained in the bills of lading; which he also says he received from Shaffei with the written parts and shipping directions in the handwriting of the latter, which were then signed by him or his *491 authority, and returned to Shaffer before the barley .was taken away. He further testified that Shaffer & Co. had been extensive shippers of grain by this railroad for many years, and that he kept the blank bills of lading of the company for his use in their shipments.' It is clear that if the bills of lading so prepared by Shaffer and signed by Smith constitute the contract between the parties, they contain stipulations which show the plaintiffs had no right to recover, and if so, upon what ground can they stand? It is plain that no one testifies to'a'verbal contract, for the most that can be claimed from Mr. Shaffer’s own evidence is that he applied to Smith to know what the rates would be, and that Smith told him what they would be.. He does not claim that he told Smith he would accept the rates .and ship the barley; nor can he claim that the contract was not in writing, or that he was ignorant of the contents of the bills of lading, for he prepared them himself, and sent them to the company for signature, and then shipped the barley; and he cannot now be allowed to say that he was ignorant of the terms of the contract signed at his instance and request.
We have looked with some care at the many exceptions taken by the plaintiffs to the rulings of the court, on questions of evidence. We think such rulings are generally correct, but there are one or two instances in which we think they are hardly defensible. .But they were on collateral questions, and did not, in our judgment, in the slightest degree, affect the question as to what was the contract in the case, and therefore the rulings were not prejudicial to the plaintiffs.
The same remark might be made as to one or two of the charges given or asked and refused; but in addition to this, we think the manner in which the exceptions were taken was too indefinite to justify us in reversing the judgment on that ground, even if the errors were prejudicial. The *492 exception was taken to "the charge as a whole, yet much the greater part of it was correct; the exceptions to the refusal to give the charges as asked, was to them as a series, and not to each of them, and we think some one or more of them were incorrect, On a consideration of the whole case we feel constrained to affirm the judgment, with costs,
H. J£. Porter, for Plaintiffs in Error.
Thos. Millihin, for Defendant in Error.